21 F.3d 243
 UNITED STATES of America, Appellee,
v.
Daniel Anthony FETLOW, Appellants.
UNITED STATES of America, Appellee,
v.
Winston G. MORRISON, Appellant.
UNITED STATES of America, Appellee,
v.
Robert Mark FERGUSON, Appellant.
UNITED STATES of America, Appellee,
v.
Bernard Anthony VALENTINE, Appellant.
 Nos. 93-2377, 93-2536, 93-2558 and 93-2763.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 16, 1993.
Decided April 7, 1994.
Rehearing Denied June 24, 1994
in Nos. 93-2558, 93-2763.
 
 1
 Brian S. Witherspoon, St. Louis, MO, argued for Daniel A. Fetlow.
 
 
 2
 Bruce W. Simon, Kansas City, MO, argued, for Winston G. Morrison.
 
 
 3
 Scott L. Bernstein, St. Louis, MO, argued, for Robert M. Ferguson.
 
 
 4
 Douglas A. Forsyth, Clayton, MO, argued, for Bernard A. Valentine.
 
 
 5
 Edward J. Rogers, Asst. U.S. Atty., St. Louis, MO, argued, for U.S.
 
 
 6
 Before MAGILL and BEAM, Circuit Judges, and VAN SICKLE,* Senior District Judge.
 
 
 7
 VAN SICKLE, Senior District Judge.
 
 
 8
 Daniel Anthony Fetlow, Winston G. Morrison, Robert Mark Ferguson, and Bernard Anthony Valentine were convicted for conspiracy to possess with intent to distribute cocaine and conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1), 846. In addition, Ferguson and Valentine were convicted for interstate transportation in aid of a racketeering enterprise in violation of 18 U.S.C. Secs. 2, 1952. Ferguson and Valentine appeal from their respective convictions. Morrison appeals from both his conviction and sentence. Fetlow appeals from his sentence.
 
 
 9
 We affirm the convictions of appellants Morrison, Ferguson, and Valentine. We also affirm the sentence of appellant Fetlow. However, we vacate appellant Morrison's sentence and remand for further proceedings.
 
 I. BACKGROUND
 
 10
 In November, 1992, members of the St. Louis Metropolitan Police Department received information that Daniel Anthony Fetlow was dealing cocaine in St. Louis. On the date of an expected cocaine delivery, while under surveillance, Fetlow met a suspected drug distributor and wired $3,000 to Shirley Swift in California. Later that day, police officers stopped Fetlow's vehicle, arrested him, and seized a bag containing approximately .5 kilograms of cocaine, an electronic pager, and a copy of the receipt for the money transfer he had made earlier in the evening.
 
 
 11
 After being advised of his constitutional rights, Fetlow made a taped statement and signed a written consent to search his apartment. In his statement, Fetlow indicated that the cocaine seized was part of a 5 kilogram shipment that couriers working for Winston G. Morrison had delivered and that the remaining cocaine was stored in the apartment. While searching the apartment, the officers seized approximately 3 kilograms of cocaine, a scale, bags, a loaded automatic pistol, two large rectangular metal containers filled with coffee grounds, and $18,950 in U.S. currency. Fetlow was then taken to the police department and booked.
 
 
 12
 While Fetlow was being interviewed by a detective the next day, his electronic pager was activated by a call from a public pay phone. Fetlow returned the call and informed the police that the caller had been one of the couriers who had brought the cocaine shipment from California. He then gave the police the location where the couriers could be found. The description of the couriers was given to other officers who then went to the area and took Bernard Anthony Valentine and Robert Mark Ferguson into custody. They were arrested while driving a car bearing California license plates. A number of documents were seized from the automobile. Among these documents was a water and power bill in the name of Shirley Swift.
 
 
 13
 Valentine and Ferguson were returned to the police station where they were advised of their constitutional rights. Valentine waived his rights and made both oral and taped statements. In his statements, Valentine recounted that he had made a total of three trips to St. Louis to bring cocaine to Fetlow. He said he had been paid to make these trips by Morrison, who had accompanied him on the first trip. Valentine also told police that he and Morrison returned to California after that trip with $125,000. On the second trip, he said he was accompanied by an individual known to him only as "Hank," and returned with $150,000. On the third trip, which led to his arrest, he said he had been accompanied by Ferguson, whom he had just met before leaving California.
 
 
 14
 At the time of his arrest, Valentine had an apartment key in his possession. Valentine gave the police permission to search that apartment, where detectives found bags of coffee grounds and some documents. Among the documents were a slip of paper bearing Fetlow's pager number and a money order receipt listing Fetlow as the purchaser of the money order.
 
 
 15
 Ferguson also signed a waiver of his rights and made an oral statement. In his oral statement, Ferguson allegedly said he believed Valentine and himself were transporting drugs to St. Louis. Ferguson then made a taped statement. In his taped statement, Ferguson said he believed they were involved in some type of illegal action, but denied having previously stated that he believed they were transporting drugs.
 
 
 16
 At the request of the police, Fetlow called Morrison in California and advised him that Valentine and Ferguson had been arrested. He also indicated that he had the money from the sale of the cocaine and that he was going to send it out on a plane with a female courier. The police contacted DEA agents at the Los Angeles International Airport and arranged for a policewoman to act as the courier. The Los Angeles DEA agents set up a surveillance. Some time after the police woman had walked in from the arriving flight area, she was approached by a woman named Orleen Williams. The policewoman handed Williams the briefcase that was supposed to contain the cocaine proceeds, and Williams was subsequently arrested.
 
 
 17
 Williams was taken to a DEA office where she told agents that Morrison had brought her to the airport with directions to get the briefcase. At the request of the agents, Williams arranged for Morrison to come back to the airport to pick her up.
 
 
 18
 DEA agents set up another surveillance at the airport. Appellant Morrison drove up in a vehicle registered to Shirley Swift. Morrison was apprehended and advised of his rights. He then made a statement in which he admitted involvement in the delivery of cocaine to Chicago and other cities. He also claimed that he arranged for other individuals to make these deliveries. A search of Morrison's personal effects revealed a telephone book which contained an entry that had appeared several times on the telephone bills that were seized from the automobile Valentine was driving, and an address book which contained Fetlow's electronic pager number.
 
 
 19
 In December, 1991, Fetlow, Valentine, Ferguson, and Morrison were indicted for conspiracy to possess with intent to distribute cocaine and conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1), 846 (Count I). Valentine and Ferguson were also charged with a violation of the Travel Act, 18 U.S.C. Secs. 2, 1952[1] (Count II). Fetlow entered a plea of guilty to Count I. Morrison was tried before a jury and found guilty of Count I. In a separate trial, appellants Ferguson and Valentine were tried before a jury and found guilty of both Counts I & II.
 
 
 20
 Fetlow was sentenced to 188 months imprisonment with an additional period of 5 years supervised release. Morrison was sentenced to 292 months imprisonment with an additional period of 5 years supervised release. Valentine was given concurrent sentences of 188 months imprisonment on Count I and 60 months imprisonment on Count II with an additional period of 5 years supervised release on each count to be served concurrently. Ferguson was given concurrent sentences of 120 months imprisonment on Count I and 60 months imprisonment on Count II with an additional period of 5 years supervised release on each count to be served concurrently.
 
 
 21
 The same United States District Judge presided over the trials and sentencing of all appellants.
 
 
 22
 These appeals followed.
 
 II. DISCUSSION
 A. Underlying Convictions
 
 23
 Morrison, Ferguson, and Valentine argue on appeal that there was insufficient evidence introduced at their respective trials to support their convictions. When reviewing a conviction pursuant to an insufficiency of evidence challenge, the standard of review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See United States v. Schmidt, 922 F.2d 1365, 1368 (8th Cir.1991).
 
 
 24
 With regard to the conspiracy convictions, the essential elements of a conspiracy are an agreement with at least one other person with the objective to violate the law, coupled with one or more overt acts in furtherance of the illegal purpose. United States v. Foote, 898 F.2d 659, 663 (8th Cir.1990), cert. denied, 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990). A criminal conspiracy may be inferred from totally circumstantial evidence. Id. Once a conspiracy is found, only slight evidence linking a defendant to the conspiracy is necessary to convict. United States v. Brown, 956 F.2d 782 (8th Cir.1992).
 
 
 25
 With regard to the Travel Act convictions, to establish a violation of that Act, the government must prove that the defendants engaged in interstate travel with intent to promote an unlawful activity, and that they committed an overt act in performing or attempting to perform the unlawful activity. See Spinelli v. United States, 382 F.2d 871, 893 (8th Cir.1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
 
 
 26
 After consideration of the evidence, we conclude that a rational trier of fact could have found Morrison, Ferguson, and Valentine guilty beyond a reasonable doubt of conspiracy to possess with intent to distribute cocaine and conspiracy to distribute cocaine, and could have found Ferguson and Valentine guilty beyond a reasonable doubt of violating the Travel Act.
 
 B. Sentences
 
 27
 Fetlow and Morrison appeal from their respective sentences as imposed by the district court. Title 18 U.S.C. Sec. 3742(e) sets out the standard of review for appeals of sentences imposed under the Federal Sentencing Guidelines:
 
 
 28
 The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 1. Morrison's Sentence
 
 29
 At his sentencing hearing, Morrison, who was convicted for conspiracy to possess with intent to distribute cocaine and conspiracy to distribute cocaine, objected to: (1) the conclusion in the presentence report that his base offense level was 34--the level corresponding to 15 kilograms of cocaine; (2) the presentence report's enhancement of the offense level computation under United States Sentencing Guidelines ("Guidelines") Sec. 3B1.1(a), which provides for a four-level increase if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and (3) the presentence report's enhancement under Guidelines Sec. 2D1.1(b)(1), which provides for a two-level increase if a dangerous weapon was possessed during the commission of a drug offense. Morrison Sentencing Tr. 283-84, 291.
 
 
 30
 The district judge listened to arguments made by the government in response to Morrison's objections. Morrison Sentencing Tr. 285-87, 291-93. Testimony relevant to the Guidelines Sec. 2D1.1(b)(1) enhancement was also introduced. Id. at 287-90. The district judge then responded to Morrison's objections by stating: "I'm going to deny the objections and for the record, I find that the total offense level here is 40...." Id. at 293. The court made no other findings or rulings with regard to Morrison's objections.
 
 
 31
 On appeal, Morrison argues that the district court erred by failing to make sufficient factual findings in response to his objections. Fed.R.Crim.P. 32(c)(3)(D) provides, in part:
 
 
 32
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.
 
 
 33
 If the sentencing court elects to consider the disputed matter, it must receive evidence and make a finding based on the preponderance of the evidence. United States v. Streeter, 907 F.2d 781, 791-92 (8th Cir.1990). The sentencing court may consider any relevant information, provided that the information has sufficient indicia of reliability to support its probable accuracy. United States v. Granados, 962 F.2d 767, 772 (8th Cir.1992). However, the presentence report and statements of counsel are not evidence. United States v. Hammer, 3 F.3d 266, 273 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994).
 
 
 34
 In determining whether the findings of a sentencing court are sufficient to satisfy the requirements of Rule 32(c)(3)(D), we consider whether the findings allow for meaningful appellate review. United States v. Coleman, 990 F.2d 419, 421-422 (8th Cir.1993); United States v. Candie, 974 F.2d 61, 65 (8th Cir.1992). Where the findings of the sentencing court render the appellate court unable to determine the legal basis upon which they were made, a remand for further findings is warranted. See Coleman, 990 F.2d at 422; Candie, 974 F.2d at 65. If the sentencing court fails to articulate sufficiently the legal basis for its findings, the fact that there may be evidence in the record which could have served as a basis is irrelevant. See Coleman, 990 F.2d at 422; Candie, 974 F.2d at 65.
 
 
 35
 In this case, the district court's finding was insufficient to satisfy Rule 32(c)(3)(D). Again, at Morrison's sentencing hearing, the district judge listened to arguments made by the government in response to Morrison's objections, heard testimony relevant to the Guidelines Sec. 2D1.1(b)(1) enhancement, and then made the following finding: "I'm going to deny the objections and for the record, I find that the total offense level here is 40...." Morrison Sentencing Tr. 293. This finding does not articulate the legal basis for the district court's conclusion. As noted above, a sentencing court may consider any relevant information, provided that the information has sufficient indicia of reliability to support its probable accuracy. Granados, 962 F.2d at 772. In so much as the district court offered no explanation as to the basis for its finding, we are unable to determine, upon review, whether the information relied on had sufficient indicia of reliability. We are also unable to determine whether the sentencing court impermissibly relied on the presentence report or statements of counsel.
 
 
 36
 The Eighth Circuit has held that Rule 32(c)(3)(D) may be satisfied via comments made by the sentencing judge, aside from a formal statement of findings, if they allow the appellate court to clearly determine the basis for the sentencing court's findings. In United States v. Edwards, 994 F.2d 417 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 701, 126 L.Ed.2d 667 (1994), this circuit found that Rule 32(c)(3)(D) had been satisfied because "the district court's comments at the sentencings, and its specific overruling of appellants' quantity objections to the [presentence reports], make it clear that the court credited [the witness's] quantity testimony for sentencing purposes." Id. at 423. Similarly, in United States v. Mills, 987 F.2d 1311 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 403, 126 L.Ed.2d 351 (1993), this circuit found Rule 32(c)(3)(D) satisfied where the sentencing court made "specific comments concerning its impression of the trial evidence" in addition to overruling the defendant's objections to allegations in the presentence report. Id. at 1317. In this case, however, the district judge made no such additional comments. At best, the temporal scheme of the sentencing proceedings might imply that the district court relied on certain evidence adduced at trial and at the sentencing hearing as the basis for its finding.[2] However, this circuit has noted that Rule 32(c)(3)(D) requires a district court to do more than make implicit rulings. See United States v. Garbett, 867 F.2d 1132, 1136 (8th Cir.1989).
 
 
 37
 Because the wording of the district court's finding leaves us unable to determine clearly the legal basis for its conclusion that Morrison's total offense level was 40, we remand for further proceedings.
 
 2. Fetlow's Sentence
 
 38
 At his sentencing hearing, Fetlow, who plead guilty to conspiracy to possess with intent to distribute cocaine and conspiracy to distribute cocaine, objected to the presentence report's enhancement of the offense level computation under Guidelines Sec. 3B1.1(b), which provides for an increase of 3 levels if the defendant was a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive. Fetlow Sentencing Tr. 3.
 
 
 39
 The district judge initially responded to Fetlow's objection by denying it without explanation. Fetlow Sentencing Tr. 5. Later in the proceedings, the judge stated: "I'm going to go with the presentence report on all of this." Fetlow Sentencing Tr. 15. Finally, near the close of Fetlow's sentencing hearing, the district judge concluded: "For the record, let me state that the total offense level as found in this report is 36...." Fetlow Sentencing Tr. 16.
 
 
 40
 On appeal, Fetlow's sole argument is that there was insufficient evidence to support the Guidelines Sec. 3B1.1(b) enhancement. Specifically, Fetlow argues that other than the presentence report, the government offered no evidence that there were five or more participants involved in the offense. Unlike Appellant Morrison, Fetlow does not challenge the sufficiency of the finding made by the district court. We must therefore proceed with the assumption that the district court's finding was sufficient for purposes of Fed.R.Crim.P.Rule 32(c)(3)(D).
 
 
 41
 As stated previously, when a defendant challenges the accuracy of a factual allegation in a presentence report, Rule 32(c)(3)(D) requires that the sentencing court either make a finding as to the allegation or a determination that the matter controverted will not be taken into account at sentencing. If the sentencing court elects to make a finding, the government must produce evidence sufficient to convince the court by a preponderance of the evidence that the fact in question exists. United States v. Streeter, 907 F.2d 781, 792 (8th Cir.1990). A presentence report is not a sufficient basis for a court to make findings on contested issues of material fact. Id. at 791-92. We do not conclude, however, that the district court relied solely on Fetlow's presentence report in finding that the Guidelines Sec. 3B1.1(b) enhancement applied.
 
 
 42
 In this case, no evidence was introduced at Fetlow's sentencing hearing. A formal sentencing hearing is not, however, the exclusive means by which the government may meet the evidentiary burden set out in Streeter. This circuit has held that Rule 32(c)(3)(D) may be satisfied where a sentencing judge, who also presides over a defendant's trial, makes findings based on evidence presented at the trial phase even though no additional exhibits or testimony are introduced at the sentencing phase. See United States v. Mills, 987 F.2d 1311, 1316-17 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 403, 126 L.Ed.2d 351 (1993). Here, due to Fetlow's guilty plea, the government did not have an opportunity to produce evidence addressed to the Guidelines Sec. 3B1.1(b) enhancement at his trial. The government did, however, introduce evidence that Fetlow was a key member of a cocaine distribution ring that involved at least five participants at the trials of co-defendants Morrison, Ferguson, and Valentine. We hold that in determining whether the government has met the evidentiary burden which applies when a sentencing court elects to make a finding on an issue disputed at the sentencing phase, the sentencing court may consider, without rehearing, evidence introduced at the trial of a co-defendant if that evidence is relevant to the issue disputed at the sentencing phase, and if the sentencing judge also presided over the co-defendant's trial.
 
 
 43
 After a review of the evidence relevant to the applicability of the Guidelines Sec. 3B1.1(b) enhancement to Fetlow, adduced at the trials of co-defendants Morrison, Ferguson, and Valentine, we conclude that it was not clearly erroneous for the district court to find that the enhancement applied.
 
 III. CONCLUSION
 
 44
 For the foregoing reasons, the convictions of Winston G. Morrison, Robert Mark Ferguson, and Bernard Anthony Valentine, are affirmed. The sentence of Daniel Anthony Fetlow is also affirmed. The sentence of Winston G. Morrison is vacated and remanded for further proceedings.
 
 
 
 *
 The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 The Travel Act, 18 U.S.C. Sec. 1952, provides, in pertinent part:
 (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to--
 (1) distribute the proceeds of any unlawful activity; or
 (2) commit any crime of violence to further any unlawful activity; or
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
 and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
 
 
 [2]
 One might infer that the district judge was relying on certain evidence merely because it was brought to her attention prior to the making of the finding at issue in this case