# United States Court of Appeals
## For the Eighth Circuit

---

No. 16-1091

---

United States of America

*Plaintiff - Appellee*

v.

Velnita Jolette Hairy Chin

*Defendant - Appellant*

---

Appeal from United States District Court
for the District of South Dakota - Aberdeen

---

Submitted: October 17, 2016
Filed: March 6, 2017
[Published]

---

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

---

PER CURIAM.

Velnita Hairy Chin, a member of the Standing Rock Sioux Tribe and resident of the Tribe's reservation, pleaded guilty to one count of child abuse, in violation of 18 U.S.C. § 1153(a) and S.D. Codified Laws § 26-10-1. The United States Probation Office recommended in Hairy Chin's presentence investigation report (PSR) that she receive a total offense level of six and a criminal history category II, providing her

with a sentencing range of one to seven months' imprisonment. Hairy Chin thereafter objected to the PSR's recommended two-level increase for the victim's bodily injury pursuant to U.S.S.G. § 2A2.3(b)(1)(A).

At the sentencing hearing, the government requested an upward departure from the suggested sentencing range recommended in the PSR in light of (1) the extreme conduct precipitating the charge, (2) the dismissed and uncharged conduct, and (3) Hairy Chin's understated criminal history. The district court,[1] after reviewing the circumstances of Hairy Chin's case, granted the government's request. The court assigned Hairy Chin a total offense level of 12 and a category VI criminal history, resulting in a Guidelines range of 30 to 37 months' imprisonment. Notably, the district court sentenced her to 37 months' imprisonment, which was the high end of the applicable Guidelines range. In doing so, the court did not explicitly rule on Hairy Chin's objection to the PSR's recommended two-level increase for the victim's bodily injury. Hairy Chin appeals her sentence, asserting that the district court erred by failing to rule on her objection. She also argues that the district court abused its discretion by imposing an unreasonable sentence. We disagree and affirm the judgment of the district court.

I. *Background*

On the evening of June 23, 2015, the Bureau of Indian Affairs (BIA) received a complaint about unsupervised children playing outside Hairy Chin's home. When the BIA officer arrived at the residence, he discovered seven unattended children under the age of 12, including a crying infant strapped into a car seat. In the basement, the officer found Hairy Chin unconscious and apparently inebriated. After identifying Hairy Chin as the responsible adult, the officer arrested her for child neglect. Emergency medical technicians arrived and transported the infant to the

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

hospital because of his inconsolable crying. When asked about the child, Hairy Chin admitted to dropping the baby the previous day but asserted that the child was fine. At the hospital, the infant was diagnosed with abrasions on his legs from the extensive time in the car seat, bruising on his right leg and right buttock, diaper rash, air in his lungs from continual crying, and an ear infection. Child Protection Services (CPS) removed all seven children from the residence and placed them in alternative homes.

Hairy Chin has a lengthy criminal history. Her state and federal convictions include theft, damage to property, and child endangerment. In addition, Hairy Chin has accumulated more than 40 convictions in the Standing Rock Tribal Court. These convictions, although not counted in her PSR criminal history, include multiple counts of disorderly conduct, eight counts of child neglect, driving while under the influence, possession of drugs, criminal contempt, and aggravated assault. In 2012, Hairy Chin pleaded guilty to federal child-abuse charges. The facts of the 2012 incident mirror the current case remarkably. Hairy Chin brought her four-month-old daughter to the hospital because of a seizure. Medical professionals determined that the infant suffered from several head injuries and a severe infection. The multiple head injuries were at different stages of healing, indicating a pattern of being dropped or mishandled. Hairy Chin served one year of imprisonment as a result. The present offense occurred just six months after she completed supervised release. Despite her criminal record, CPS placed four of Hairy Chin's grandchildren in her care—all under the age of five. She was also the primary caregiver for three of her own minor children.

At sentencing, the government introduced testimony from the BIA officer sent to Hairy Chin's home and photographic evidence of the injuries sustained by the infant confined in the car seat. The CPS worker in charge of the four grandchildren also took the stand. The CPS worker admitted that she failed to perform a background check on Hairy Chin and failed to perform a home inspection before placing the four

grandchildren in her care. In response to this testimony, the district court interjected, "If this is the way that the child protection agency is being run, children are at great risk [at the Standing Rock Sioux Reservation]." After hearing arguments from defense counsel, the district court discussed Hairy Chin's criminal history at length:

> And so this is an outrageous history of one crime after another and, more importantly, one crime after another of abusing children, including a conviction in this Court.

> ***

> Clearly, an upward departure is proper here.

> ***

> We have all of these multiple counts of conviction for which the defendant did not receive a criminal history point, and I've gone through all of those convictions. This is an outrageous case, very frankly.

The district court determined that the number and seriousness of Hairy Chin's past criminal convictions placed her into a criminal history category VI pursuant to U.S.S.G. § 4A1.3. The court adopted the PSR's offense-level calculation of six, which included the two-level increase under U.S.S.G. § 2A2.3(b)(1)(A) for the bodily injury sustained by the infant, and increased that level to 12 pursuant to U.S.S.G. 5K2.21 for the six dismissed counts of child abuse regarding the other six children in Hairy Chin's custody on the night of her arrest. The court determined Hairy Chin's Guidelines range to be 30 to 37 months' imprisonment and sentenced her to 37 months.

## II. *Discussion*

"We review a sentence in two parts: first, we review for significant procedural error, such as an improper calculation of the advisory sentencing guidelines range;

-4-

and second, absent significant procedural error, we review for substantive reasonableness." *United States v. Fischer*, 551 F.3d 751, 754 (8th Cir. 2008). Hairy Chin argues that the district court procedurally erred and that her sentence is substantively unreasonable. We will examine both of these contentions in turn.

## A. *Procedural Error*

A significant procedural error can occur if the district court fails to consider the sentencing factors in 18 U.S.C. § 3553(a), selects a sentence based on clearly erroneous facts, or fails to adequately explain its chosen sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines de novo." *United States v. Barker*, 556 F.3d 682, 689 (8th Cir. 2009). We will find clear error only if the review produces "the definite and firm conviction that a mistake has been committed." *United States v. Adetiloye*, 716 F.3d 1030, 1036 (8th Cir. 2013) (quoting *United States v. Lalley*, 257 F.3d 751, 758 (8th Cir. 2001)). "Compliance with rules of criminal procedure is reviewed de novo." *United States v. Theimer*, 557 F.3d 576, 577 (8th Cir. 2009).

Hairy Chin argues that the district court committed reversible error by failing to rule on her objection to the PSR's recommended two-level increase for the victim's bodily injury pursuant to U.S.S.G. § 2A2.3(b)(1)(A). The district court ruled against the PSR objections generally.[2] The court did not make a specific finding on whether the injury sustained by the infant in Hairy Chin's care met the definition of "bodily injury" under U.S.S.G. § 1B1.1. Hairy Chin asserts that this oversight fell below the standard set out by Federal Rule of Criminal Procedure 32(i)(3)(B), which requires a sentencing court to rule on any disputed PSR objection. She points to *United States v. Fetlow*, 21 F.3d 243 (8th Cir. 1994), for the proposition that a blanket overruling

---

[2]The district court stated: "The presentence report speaks for itself in that regard. So that—the objections are overruled, in any event."

of all objections to the PSR violates Rule 32. "Where the findings of the sentencing court render the appellate court unable to determine the legal basis upon which they were made, a remand for further findings is warranted." *Id.* at 248. In *Fetlow*, the government presented no evidence at the sentencing hearing in response to the defendant's three objections to his PSR calculation, and it was unclear if the district court relied exclusively on the allegations reported in the PSR. *See id.* at 248–49. We remanded the case to the sentencing court because upon review, we could not determine if the sentencing court based its ruling upon evidence with "sufficient indicia of reliability." *Id.* at 249.

Hairy Chin presents a different case entirely. She disputes the legal conclusion of what constitutes bodily injury under § 1B1.1, not whether the district court relied on reliable evidence in making its finding. To establish the facts relating to the two-level increase, the sentencing court heard testimony from the BIA officer who saw the infant, and the court viewed photographic evidence of the infant's injuries. "If the sentencing court elects to make a finding, the government must produce evidence sufficient to convince the court by a preponderance of the evidence that the fact in question exists." *Id.* at 249–50. Unlike *Fetlow*, none of the factual allegations in this case are disputed. Although the district court did not make a specific ruling on the PSR objection, the record reflects sufficient reliable evidence for the district court to make a well-informed decision about whether Hairy Chin's conduct warranted a two-level increase pursuant to U.S.S.G. § 2A2.3(b)(1)(A). The district court was able to and did make this determination on the record before it. The absence of a specific ruling on Hairy Chin's objection is not by itself a significant procedural error because the record reflects sufficient evidence for the district court's findings to receive meaningful appellate review.

## B. *Substantive Reasonableness*

When reviewing a sentence for its substantive reasonableness, we apply an abuse-of-discretion standard. *Gall*, 552 U.S. at 51. "A district court abuses its

discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotation omitted). This review is "narrow and deferential." *Id.* at 464 (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

Hairy Chin argues that the district court improperly weighed the significance of her 40 tribal convictions in elevating her criminal history category. She asserts that because the district court did not enhance her criminal history category for the tribal convictions when it sentenced her in 2012, the court should be consistent and ignore them once again. When sentencing Hairy Chin in the 2012 case, however, the district court sentenced her to only 12 months because of uncertainty about her personal responsibility for the victim-child's multiple head injuries—not because the previous tribal convictions lacked relevance. The district court did not abuse its discretion by deciding to count Hairy Chin's tribal convictions in reaching its sentence.

She also argues that the court should have weighed her good behavior since the 2012 conviction in her favor with a lighter sentence. The facts, however, belie this argument. Once released from custody in 2013, Hairy Chin spent nine months of supervised released pregnant with the child that she later injured. When this child reached six months old, Hairy Chin was arrested once again for abusing an infant in her care. The court had ample basis for discounting her alleged mitigating good behavior, especially considering Hairy Chin's virtual repeat offense to the 2012 conviction.

Additionally, Hairy Chin argues that the district court gave improper weight to the bad acts of CPS and the Standing Rock Tribal Court. She argues that the district court, angered by these third parties' inaction, unfairly assessed the seriousness of her actions. She points to numerous expressions of frustration by the

district court when discussing the failings of CPS and the seemingly ineffective sentencing efforts of the tribal court. To be sure, the record does reflect numerous negative remarks by the district court toward various officials, but the record also reflects the court's relevant disappointment with the behavior of Hairy Chin. Nothing in the sentencing transcript indicates that the district court gave significant weight to the actions of CPS or third parties in determining Hairy Chin's final sentence. Rather, the transcript demonstrates an individualized assessment of Hairy Chin's history and the circumstances surrounding the conviction.

The district court properly weighed the circumstances of the case and the past history of Hairy Chin's criminal child neglect to make "precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts." *Feemster*, 572 F.3d at 464 (quoting *Gardellini*, 545 F.3d at 1095). The district court did not abuse its discretion; Hairy Chin's final sentence is not substantively unreasonable.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

———————————————